MEG:JMS
F.#2018R00054

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>THE PREMISES KNOWN AND DESCRIBED AS MULTIPLE CELLULAR DEVICES DESCRIBED HEREIN, CURRENTLY LOCATED IN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR ELECTRONIC DEVICES<br><br>Case No. 19-M-1163 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, ANTHONY SNEAD, JR., being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been for four years. I am assigned to investigate violations of criminal law relating to narcotics trafficking. These investigations are conducted both in an undercover and overt capacity. I have gained expertise in this area through training and daily work related to these

types of investigations. As a result of my training and experience, I am familiar with the techniques and methods of operations used by individuals involved in criminal activity to conceal their activities from detection by law enforcement officers. As part of my responsibilities, I have been involved in the execution of arrest warrants and search warrants.

3. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from my personal participation in this investigation and reports made to me by other law enforcement authorities.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched is as follows:

| DEVICE DESCRIPTION | DEFENDANT'S RESIDENCE WHERE SEIZED (12/5/19) |
|---|---|
| Black Apple iPhone, Model A1778, FCC ID: BCG-E3091A IC:579C-E3091A | Jeffrey Caamano |
| White LG cell phone, Serial No. 709CYYQ2402930, SIM Card No. 89011202000059095692 | Jeffrey Caamano |
| Black LG cell phone, Serial No. 701CQLH0745096, SIM Card No. 89011201000508885330 | Jeffrey Caamano |

| | |
|---|---|
| White LG cell phone with cracked screen, Serial No. 712CYUK3219422, SIM Card No. 89011203000007771831 | Jeffrey Caamano |
| White LG cell phone, Serial No. 801CYQX3355316, SIM Card No. 89011202000228063159 | Jeffrey Caamano |
| Apple iPhone with a red exterior backing and clear casing, with the word "(PRODUCT)" marked on the red exterior backing. | Roberto Martinez |
| Samsung Galaxy J7 cell phone, IMEI: 355077082371989, SIM Card No. 89148000004578519947 | Roberto Martinez |
| Silver Samsung cell phone in red case, IMEI: 359797090310069 | Jason Reyes |
| Black LG cell phone, IMEI: 351603-10-026398-3 | Jason Reyes |
| Black LG cell phone, IMEI: 356694095306759 | Jason Reyes |
| Black LG cell phone in silver case, IMEI: 351603101016083 | Jason Reyes |
| Black coolpad phone, IMEI: 863519032332368, SIM Card No. 8901260321926263142F | Jason Garcia |
| Black Apple iPhone, IMEI: 356601081236460 | Jason Garcia |
| Black Alcatel cell phone with cracked screen, FCC ID: RAD386, SIM Card No. 8901260145789069118 | Victor Cruz |

together and hereinafter, the "Devices." The Devices are currently located in the Eastern District of New York.

6. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. Since approximately fall of 2017, agents from the FBI have been investigating a narcotics trafficking organization involving individuals named VICTOR CRUZ, also known as "Vic," JASON GARCIA, also known as "Jay," ROBERT MARTINEZ, also known as "Rob," JEFFREY CAAMANO, also known as "Jefe," (collectively, the "defendants"), and others. This organization is engaged in narcotics trafficking in the New York area. The investigation involved, among other things, the court-authorized interception of communications over cellphones used by CRUZ and MARTINEZ. On December 5, 2018, the defendants, along with two other individuals, were arrested pursuant to a complaint and affidavit, 18-M-1157 (attached as Appendix C and incorporated herein), which charges them with conspiring to distribute heroin and outlines representative narcotics-related intercepted conversations involving each of the defendants. Prior the defendants' arrest, Judges in the Eastern and Southern District of New York authorized warrants authorizing the search of the residences of CAAMANO, CRUZ, GARCIA, MARTINEZ and REYES. See 18-MAG-10177 (S.D.N.Y.) (CAAMANO); 18-M-1158 (CRUZ and GARCIA), 18-M-1159 (MARTINEZ), and 18-M-1160 (REYES) (attached as Appendix D and incorporated herein). Each warrant also authorized the seizure of any cellphone found in the respective residence

and the search of any such cellphone for evidence of the user's involvement in narcotics trafficking activity.

8. As reflected in the chart above, the FBI seized each of the Devices pursuant to one of the respective search warrants. While the warrants authorized the FBI to search the Devices upon their seizure, FBI did not commence searching the Devices within the authorized 14-day period. The Devices have continuously remained in the lawful possession of the FBI since they were seized. Therefore, I seek this warrant to afford an additional 14-day period in which to commence the previously authorized search of the Devices.

9. The Devices are currently in the Eastern District of New York. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TECHNICAL TERMS

10. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of

calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio,

video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to variously serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

13. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

9

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

16. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Anthony Snead Jr*
ANTHONY SNEAD, JR.
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on December 12, 2019:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is as follows:

| DEVICE DESCRIPTION | DEFENDANT'S RESIDENCE WHERE SEIZED (12/5/19) |
| --- | --- |
| Black Apple iPhone, Model A1778, FCC ID: BCG-E3091A IC:579C-E3091A | Jeffrey Caamano |
| White LG cell phone, Serial No. 709CYYQ2402930, SIM Card No. 89011202000059095692 | Jeffrey Caamano |
| Black LG cell phone, Serial No. 701CQLH0745096, SIM Card No. 89011201000508885330 | Jeffrey Caamano |
| White LG cell phone with cracked screen, Serial No. 712CYUK3219422, SIM Card No. 89011203000007771831 | Jeffrey Caamano |
| White LG cell phone, Serial No. 801CYQX3355316, SIM Card No. 89011202000228063159 | Jeffrey Caamano |
| Apple iPhone with a red exterior backing and clear casing, with the word "(PRODUCT)" marked on the red exterior backing. | Roberto Martinez |
| Samsung Galaxy J7 cell phone, IMEI: 355077082371989, SIM Card No. 89148000004578519947 | Roberto Martinez |
| Silver Samsung cell phone in red case, IMEI: 359797090310069 | Jason Reyes |
| Black LG cell phone, IMEI: 351603-10-026398-3 | Jason Reyes |
| Black LG cell phone, IMEI: 356694095306759 | Jason Reyes |

| | |
|---|---|
| Black LG cell phone in silver case, IMEI: 351603101016083 | Jason Reyes |
| Black coolpad phone, IMEI: 863519032332368, SIM Card No. 8901260321926263142F | Jason Garcia |
| Black Apple iPhone, IMEI: 356601081236460 | Jason Garcia |
| Black Alcatel cell phone with cracked screen, FCC ID: RAD386, SIM Card No. 8901260145789069118 | Victor Cruz |

together and hereinafter, the "Devices." The Devices are currently located in the Eastern District of New York.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 (distribution and possession with intent to distribute narcotics) and 846 (narcotics distribution conspiracy) and involve CAAMANO, CRUZ, MARTINEZ, REYES and GARCIA (collectively, the "defendants") since September of 2017 including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording the defendants' schedule or travel from September of 2017 to the present;

   e. all bank records, checks, credit card bills, account information, and other financial records; and

   f. communications, photographs, videos and other evidence showing an association between the defendants.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.